# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| GENERAL ELECTRIC COMPANY,<br><br>       Plaintiff,<br><br>  v.<br><br>BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST,<br><br>       Defendant. | No. _____<br><br>FILED ELECTRONICALLY |

## COMPLAINT TO CONFIRM AND ENFORCE ARBITRAL AWARD

Plaintiff General Electric Company ("GE") brings this action to confirm and enforce an arbitral award issued under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") against the Boilermaker-Blacksmith National Pension Trust (the "Fund"). GE makes the following allegations based on its personal knowledge.

### PARTIES

1. GE is a multinational technology and financial-services company incorporated in New York and headquartered at 41 Farnsworth Street, Boston, Massachusetts 02210.

2. The Fund is a multiemployer pension fund established and maintained under ERISA and headquartered at 12200 N. Ambassador Drive, Kansas City, Missouri 64163.

### JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the Federal Arbitration Act, ERISA, and federal regulations

promulgated by the Pension Benefit Guaranty Corporation (the "PBGC"). *See* 9 U.S.C. § 5; 29 U.S.C. § 1451(a), (c); 29 C.F.R. § 4221.4(e).

4. The Court has personal jurisdiction over the Fund because the Fund currently "resides," "does business," and "may be found" in Kansas City, Missouri. 29 U.S.C. § 1451(d); *see* Fed. R. Civ. P. 4(k)(1)(C).

5. Venue is proper in this District because the Fund currently is "administered," "resides," and "does business" in the Western District of Missouri. 29 U.S.C. § 1451(d).

### NATURE OF THE ACTION

6. This case involves the Fund's two assessments of partial withdrawal liability under ERISA against GE. *See* 29 U.S.C. §§ 1381(a), 1385. The first assessment is based upon an alleged partial withdrawal stemming from a purported 70% decline in contribution base units from two employers owned by GE (the "70% Decline Claim"). Complaint Exhibit ("Ex.") 1 ("Award") at 1. The second assessment is based on the contention that an alleged partial withdrawal occurred under ERISA's "bargaining-out" provision when GE closed a plant in Chattanooga, Tennessee and purportedly transferred work to other entities it owned or controlled (the "Chattanooga Claim"). *Id.*

7. On March 14, 2019, the Fund issued withdrawal liability assessments on GE. The Fund claimed that GE incurred a partial withdrawal in 2014 based on the purported 70% decline in contribution base units and demanded more than $200 million. Award at 8. The Fund also asserted that GE triggered a partial withdrawal in 2016 based on the alleged transfer of work away from the Chattanooga facility. Award at 8.

8. On June 12, 2019, GE served a request for review of both claims on the Fund, objecting to the Fund's demand on multiple grounds. 29 U.S.C. § 1399(b)(2)(A). The Fund denied the request for review.

9. On October 11, 2019, GE timely demanded arbitration of the challenged assessments.

10. On May 28, 2020, by order of Judge Eric F. Melgren of the United States District Court for the District of Kansas, the Court appointed Richard McNeill, Jr. as the arbitrator of this dispute.

11. On June 3, 2021, the Fund sought leave from the Arbitrator to pursue an "alternative claim" alleging that GE incurred the partial withdrawal at the Chattanooga Facility in 2017, not 2016. The Arbitrator denied the request, and the Fund consequently voluntarily dismissed the 2016 Chattanooga Claim and asserted a new claim based on a transfer of work that purportedly occurred in 2017 instead. The new demand asserted that GE owed more than $22.5 million in partial withdrawal liability on this claim.

12. On December 23, 2021, GE served a request for review of the 2017 Chattanooga Claim on the Fund and objected to the Fund's demand on multiple grounds. 29 U.S.C. § 1399(b)(2)(A). The Fund denied the request for review.

13. On June 2, 2022, GE timely demanded arbitration of the 2017 Chattanooga Claim, and the parties agreed that Arbitrator McNeill should also serve as the arbitrator of this claim.

14. The parties thereafter conducted discovery, as authorized by PBGC Regulations, to challenge the partial withdrawal liability assessment. The parties additionally

entered into stipulations, inter alia, regarding the historical data about the number of unionized boilermakers GE employed during agreed-to relevant periods of time, as well as stipulations on GE's contributions and the hours incurred by GE's unionized boilermakers relating to those contributions.

15. Following the close of discovery, the parties filed cross-motions for summary judgment on both the 70% Decline Claim and the Chattanooga Claim on August 30, 2023, and the matters were fully briefed on October 19, 2023.

16. GE asserted that the 70% Decline Claim was improper because GE was shielded from withdrawal liability by ERISA's building and construction industry exemption (the "BCI exemption"). This exemption applies where "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry." *Id.* § 1383(b)(1)(A); *see id.* § 1388(d)(1). GE also argued that even if the BCI exemption was not available, it did not suffer a 70% decline in contribution base units during the relevant time period and thus did not suffer a partial withdrawal within the meaning of ERISA. 29 U.S.C. § 1385(b)(1).

17. As to the 2017 Chattanooga Claim, GE again asserted that the BCI exemption shielded it from withdrawal liability. GE further contended that even if the BCI exemption did not apply, GE permanently ceased its obligation to contribute to the Fund in 2016, and so could not have incurred partial withdrawal liability in 2017. Lastly, GE asserted that even if it was still contributing in 2017, it did not transfer work of the type required to incur partial withdrawal liability under ERISA's bargaining-out withdrawal provision.

18. On December 11, 2023, the Arbitrator issued a written ruling granting summary judgment to GE on both the 70% Decline and the 2017 Chattanooga Claim. Award at 21. The Arbitrator concluded that GE was exempt from withdrawal liability under the BCI exemption and therefore granted summary judgment for GE without ruling on the remaining issues. *Id.* at 18.

19. The Arbitrator explained that Congress enacted the BCI exemption to withdrawal liability because of the transient nature of the building and construction industry. *Id.* at 9. The Arbitrator explained that determining whether the BCI exemption applies requires "account[ing] for the *reality* of the employers operations," which involves "a case-by-case factual review of an employer's operations." *Id.* at 15. Based on "the totality of the record," the Arbitrator explained, "the work performed by GE's construction employees was of a large scale, and occurred during certain times of the year." *Id.* at 18. "The record," the Arbitrator continued, "is consistent with an employer that repairs or maintains boilers at customers' facilities at times when those boilers can be shut down for maintenance, which typically are the summer months." *Id.* Accordingly, the Arbitrator concluded, GE was precisely the type of company with a transient workforce that Congress intended to shield from liability under the BCI exemption. *Id.* The Arbitrator thus awarded summary judgment to GE on the 70% Decline Claim. *Id.*

20. For the Chattanooga Claim, the Arbitrator noted the Fund's concession that "if GE convinces the Arbitrator that it is exempt from liability under [the Exemption] as to the 70% Decline Claim, it would also be exempt from liability as to the Chattanooga Claim." *Id.* at 20. Accordingly, because the Arbitrator found that GE was exempt from liability under

– 5 –

the BCI exemption on the 70% Decline Claim, it also concluded that GE was exempt from liability under the exemption on the Chattanooga Claim. *Id.* The Arbitrator thus awarded summary judgment to GE on the Chattanooga Claim, too. *Id.*

21. Through this action, GE timely seeks to recognize and enforce the Arbitrator's award vacating the Fund's assessment of withdrawal liability. *See* 29 U.S.C. § 1401(b)(2).

## COUNT ONE

### CONFIRM AND ENFORCE ARBITRATION AWARD

22. GE herein incorporates all foregoing paragraphs of this complaint.

23. To qualify for the BCI exemption, an employer must satisfy two requirements. *First*, "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan" must "perform work in the building and construction industry." 29 U.S.C. § 1383(b)(1)(A). Courts have typically held that a share of "85% or more" satisfies this "substantially all" test.

24. *Second*, the plan must "primarily cover[ ] employees in the building and construction industry." 29 U.S.C. § 1383(b)(1)(B)(i).

25. If these two elements are satisfied, the BCI exemption applies and ERISA's ordinary withdrawal rules do not.

26. The BCI exemption's plain statutory text requires a cumulative count of "employees" who performed building and construction work over the relevant time period.

27. Here, the parties agreed the relevant time period for the 70% Decline Claim is the 8-year period from 2007 to 2014. The parties also agreed the relevant time period for the 2017 Chattanooga Claim is the 8-year period from 2009 to 2016.

28. During those time periods, over 95% of GE's boilermaker employees performed building and construction work—well above the threshold that courts recognize qualifies as "substantially all."

29. The Fund primarily covers employees in the building and construction industry.

30. Accordingly, the Arbitrator correctly determined that the BCI exemption shielded GE from partial withdrawal liability on the 70% claim.

31. The Fund conceded that if the BCI exemption shields GE from withdrawal liability on the 70% Decline Claim then it also shields GE from liability on the Chattanooga Claim.

32. The Arbitrator correctly found that the BCI exemption shields GE from withdrawal liability on the 70% Decline Claim, and that the BCI exemption also shields GE from withdrawal liability on the Chattanooga Claim.

## DEMAND FOR RELIEF

33. Wherefore, GE respectfully requests that this Court enter judgment:

    a. Confirming the Arbitrator's Award to the extent it vacated the Fund's withdrawal liability assessment;

    b. Ordering the Fund to refund with appropriate interest any excess payments made by GE;

    c. Ordering the Fund to pay GE's costs and expenses incurred in this action, including reasonable attorneys' fees; and

    d. Award GE any other just and proper relief.

| December 11, 2023 | Respectfully submitted, |
|---|---|
| | /s/ *Christina Pyle Engle* |
| Tracy V. Schaffer (*pro hac vice* forthcoming) | Martin M. Loring (Mo. No. 29712) |
| JONES DAY | Christina Pyle Engle (Mo. No. 64426) |
| 250 Vesey Street | HUSCH BLACKWELL |
| New York, NY 10281 | 4801 Main Street, Suite 1000 |
| T: (212) 326-3939 | Kansas City, MO 64112 |
| F: (212) 755-7306 | T: (816) 983-8000 |
| tschaffer@jonesday.com | F: (816) 983-8080 |
| | martin.loring@huschblackwell.com |
| | christina.engle@huschblackwell.com |
| | |
| | Evan Miller (*pro hac vice* forthcoming) |
| | Jacob Roth (*pro hac vice* forthcoming) |
| | JONES DAY |
| | 51 Louisiana Avenue, N.W. |
| | Washington, D.C. 20001 |
| | T: (202) 879-3939 |
| | F: (202) 626-1700 |
| | emiller@jonesday.com |
| | yroth@jonesday.com |

*Attorneys for Plaintiff General Electric Co.*