| | |
|---|---|
| GENERAL ELECTRIC COMPANY, | |
| Plaintiff, | |
| v. | No. 5:23-cv-6162 |
| BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST, | (Related to No. 5:24-cv-6004) |
| Defendant. | |

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Boilermaker-Blacksmith National Pension Trust (the "Fund") makes the following Answer and Affirmative Defenses to the Complaint filed by Plaintiff General Electric Company ("GE"). For ease of reference, the Fund is including each paragraph from the Complaint to which each answer responds, as well as the headings from the Complaint.

## PARTIES

1. GE is a multinational technology and financial-services company incorporated in New York and headquartered at 41 Farnsworth Street, Boston, Massachusetts 02210.

**ANSWER: Admitted.**

2. The Fund is a multiemployer pension fund established and maintained under ERISA and headquartered at 12200 N. Ambassador Drive, Kansas City, Missouri

64163.

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the Federal Arbitration Act, ERISA, and federal regulations promulgated by the Pension Benefit Guaranty Corporation (the "PBGC"). *See* 9 U.S.C. § 5; 29 U.S.C. § 1451(a), (c); 29 C.F.R. § 4221.4(e).

**ANSWER: Denied as stated. The provisions cited by GE relate to the procedure for appointing an arbitrator, which are irrelevant to this action and the Court's jurisdiction. The Court has federal subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 1401(b)(2) and 1451.**

4. The Court has personal jurisdiction over the Fund because the Fund currently "resides," "does business," and "may be found" in Kansas City, Missouri. 29 U.S.C. § 1451(d); *see* Fed. R. Civ. P. 4(k)(1)(C).

**ANSWER:** Admitted.

5. Venue is proper in this District because the Fund currently is "administered," "resides," and "does business" in the Western District of Missouri. 29 U.S.C. § 1451(d).

**ANSWER:** Admitted.

## NATURE OF THE ACTION

6. This case involves the Fund's two assessments of partial withdrawal liability under ERISA against GE. *See* 29 U.S.C. §§ 1381(a), 1385. The first assessment

is based upon an alleged partial withdrawal stemming from a purported 70% decline in contribution base units from two employers owned by GE (the "70% Decline Claim"). Complaint Exhibit ("Ex.") 1 ("Award") at 1. The second assessment is based on the contention that an alleged partial withdrawal occurred under ERISA's "bargaining-out" provision when GE closed a plant in Chattanooga, Tennessee and purportedly transferred work to other entities it owned or controlled (the "Chattanooga Claim"). *Id*.

**ANSWER: Denied in part. The Fund denies that the second assessment is based in part on "when GE closed a plant in Chattanooga, Tennessee." That assessment is based on when GE permanently ceased to have an obligation to contribute under the collective bargaining agreement covering that plant, *see* 29 U.S.C. § 1385(b)(2)(A)(i), which is a distinct inquiry. The Fund admits all other parts of paragraph 6.**

7. On March 14, 2019, the Fund issued withdrawal liability assessments on GE. The Fund claimed that GE incurred a partial withdrawal in 2014 based on the purported 70% decline in contribution base units and demanded more than $200 million. Award at 8. The Fund also asserted that GE triggered a partial withdrawal in 2016 based on the alleged transfer of work away from the Chattanooga facility. Award at 8.

**ANSWER: Admitted.**

8. On June 12, 2019, GE served a request for review of both claims on the Fund, objecting to the Fund's demand on multiple grounds. 29 U.S.C. § 1399(b)(2)(A). The Fund denied the request for review.

**ANSWER: Admitted.**

9. On October 11, 2019, GE timely demanded arbitration of the challenged

assessments.

**ANSWER: Admitted.**

10. On May 28, 2020, by order of Judge Eric F. Melgren of the United States District Court for the District of Kansas, the Court appointed Richard McNeill, Jr. as the arbitrator of this dispute.

**ANSWER: Admitted.**

11. On June 3, 2021, the Fund sought leave from the Arbitrator to pursue an "alternative claim" alleging that GE incurred the partial withdrawal at the Chattanooga Facility in 2017, not 2016. The Arbitrator denied the request, and the Fund consequently voluntarily dismissed the 2016 Chattanooga Claim and asserted a new claim based on a transfer of work that purportedly occurred in 2017 instead. The new demand asserted that GE owed more than $22.5 million in partial withdrawal liability on this claim.

**ANSWER: Admitted, subject to two clarifications. First, this claim is for approximately $22.5 million in excess of the approximately $205 million 2014 partial withdrawal liability claim. Second, the new demand also asserted in the alternative that a partial withdrawal occurred in 2016 in the event that an arbitrator or court were to determine that GE's obligation to contribute under the relevant CBA ended in that year instead of 2017.**

12. On December 23, 2021, GE served a request for review of the 2017 Chattanooga Claim on the Fund and objected to the Fund's demand on multiple grounds. 29 U.S.C. § 1399(b)(2)(A). The Fund denied the request for review.

**ANSWER: Admitted.**

13. On June 2, 2022, GE timely demanded arbitration of the 2017 Chattanooga Claim, and the parties agreed that Arbitrator McNeill should also serve as the arbitrator of this claim.

**ANSWER: Admitted, with the clarification that the parties' agreement as to using Arbitrator McNeill for the Chattanooga Claim was reached after June 2, 2022.**

14. The parties thereafter conducted discovery, as authorized by PBGC Regulations, to challenge the partial withdrawal liability assessment. The parties additionally entered into stipulations, inter alia, regarding the historical data about the number of unionized boilermakers GE employed during agreed-to relevant periods of time, as well as stipulations on GE's contributions and the hours incurred by GE's unionized boilermakers relating to those contributions.

**ANSWER: Denied as stated. The Fund admits that the parties conducted discovery and entered into various stipulations. The remainder of the allegation seeks to paraphrase or characterize the contents of written documents, *i.e.*, the parties' stipulations. Those documents speak for themselves, and the Fund denies any allegations that are inconsistent with them.**

15. Following the close of discovery, the parties filed cross-motions for summary judgment on both the 70% Decline Claim and the Chattanooga Claim on August 30, 2023, and the matters were fully briefed on October 19, 2023.

**ANSWER: Admitted.**

16. GE asserted that the 70% Decline Claim was improper because GE was shielded from withdrawal liability by ERISA's building and construction industry

exemption (the "BCI exemption"). This exemption applies where "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry." *Id*. § 1383(b)(1)(A); *see id*. § 1388(d)(1). GE also argued that even if the BCI exemption was not available, it did not suffer a 70% decline in contribution base units during the relevant time period and thus did not suffer a partial withdrawal within the meaning of ERISA. 29 U.S.C. § 1385(b)(1).

**ANSWER: This allegation seeks to paraphrase or characterize the contents of written documents and statutes, which speak for themselves. The Fund denies any allegations that are inconsistent with such documents or statutes. In further response, the Fund denies GE's assertions that the BCI Exemption applies and that there was not a partial withdrawal under 29 U.S.C. § 1385(b)(1).**

17. As to the 2017 Chattanooga Claim, GE again asserted that the BCI exemption shielded it from withdrawal liability. GE further contended that even if the BCI exemption did not apply, GE permanently ceased its obligation to contribute to the Fund in 2016, and so could not have incurred partial withdrawal liability in 2017. Lastly, GE asserted that even if it was still contributing in 2017, it did not transfer work of the type required to incur partial withdrawal liability under ERISA's bargaining-out withdrawal provision.

**ANSWER: This allegation seeks to paraphrase or characterize the contents of written documents, *i.e.,* GE's legal memoranda. Those documents speak for themselves, and the Fund denies any allegations that are inconsistent with them. In further response, the Fund denies GE's**

**assertions that the BCI Exemption applies, that GE's obligation to contribute to the Fund permanently ceased in 2016; and that GE did not transfer work under the meaning of ERISA's bargaining-out provision. Moreover, the Fund denies that GE has no partial withdrawal liability to the Fund if GE's obligation to contribute is deemed to have ended in 2016 rather than in 2017. The Fund's revised demand specifically asserted in the alternative that a partial withdrawal occurred in 2016 in that event.**

18. On December 11, 2023, the Arbitrator issued a written ruling granting summary judgment to GE on both the 70% Decline and the 2017 Chattanooga Claim. Award at 21. The Arbitrator concluded that GE was exempt from withdrawal liability under the BCI exemption and therefore granted summary judgment for GE without ruling on the remaining issues. *Id.* at 18.

**ANSWER: Admitted.**

19. The Arbitrator explained that Congress enacted the BCI exemption to withdrawal liability because of the transient nature of the building and construction industry. *Id.* at 9. The Arbitrator explained that determining whether the BCI exemption applies requires "account[ing] for the reality of the employers operations," which involves "a case-by-case factual review of an employer's operations." *Id.* at 15. Based on "the totality of the record," the Arbitrator explained, "the work performed by GE's construction employees was of a large scale, and occurred during certain times of the year." *Id.* at 18. "The record," the Arbitrator continued, "is consistent with an employer that repairs or maintains boilers at customers' facilities at times when those boilers can be shut down for maintenance, which typically are the summer months." *Id.* Accordingly, the Arbitrator concluded, GE was precisely the type of company with a

7

Case 5:23-cv-06162-BCW   Document 12   Filed 02/13/24   Page 7 of 15

transient workforce that Congress intended to shield from liability under the BCI exemption. *Id*. The Arbitrator thus awarded summary judgment to GE on the 70% Decline Claim. *Id*.

**ANSWER: This allegation seeks to paraphrase or characterize the contents of a written document, *i.e.*, the Arbitrator's Award. This document speaks for itself, and the Fund denies any allegations that are inconsistent with it. In further response the Arbitrator's Award was flawed, inconsistent, and erroneous in several respects. The Fund filed a Complaint to Vacate the award in this Court at 5:24-cv-6004. The Complaint to Vacate, which the Fund incorporates by reference herein, identities several of the flaws and errors in the Arbitrator's Award.**

20. For the Chattanooga Claim, the Arbitrator noted the Fund's concession that "if GE convinces the Arbitrator that it is exempt from liability under [the Exemption] as to the 70% Decline Claim, it would also be exempt from liability as to the Chattanooga Claim." *Id*. at 20. Accordingly, because the Arbitrator found that GE was exempt from liability under the BCI exemption on the 70% Decline Claim, it also concluded that GE was exempt from liability under the exemption on the Chattanooga Claim. *Id*. The Arbitrator thus awarded summary judgment to GE on the Chattanooga Claim, too. *Id*. 21. Through this action, GE timely seeks to recognize and enforce the Arbitrator's award vacating the Fund's assessment of withdrawal liability. *See* 29 U.S.C. § 1401(b)(2).

**ANSWER: The Fund admits that GE seeks to have this Court enforce the Award in this action. The remainder of this allegation seeks to paraphrase or characterize the contents of a written document, *i.e.*, the**

**Arbitrator's Award. This document speaks for itself, and the Fund denies any allegations that are inconsistent with it. In further response the Arbitrator's Award was flawed, inconsistent and erroneous in several respects. The Fund filed a Complaint to Vacate the award in this Court at 5:24-cv-6004. The Complaint to Vacate, which the Fund incorporates by reference herein, identities several of the flaws and errors in the Arbitrator's award.**

## COUNT ONE

CONFIRM AND ENFORCE ARBITRATION AWARD

22. GE herein incorporates all foregoing paragraphs of this complaint.

**ANSWER: The Fund incorporates all foregoing answers.**

23. To qualify for the BCI exemption, an employer must satisfy two requirements. First, "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan" must "perform work in the building and construction industry." 29 U.S.C. § 1383(b)(1)(A). Courts have typically held that a share of "85% or more" satisfies this "substantially all" test.

**ANSWER: The Fund admits that courts have typically held that "substantially all" under 29 U.S.C. § 1383(b)(1)(A) means at least 85%. The remainder of the allegation references Section 1383(b)(1)(A), but it does not quote the provision verbatim. The statute speaks for itself, and the Fund denies any allegations that are inconsistent with its language.**

24. Second, the plan must "primarily cover[] employees in the building and construction industry." 29 U.S.C. § 1383(b)(1)(B)(i).

**ANSWER: This allegation references Section 1383(b)(1)(A), but it does not quote the provision verbatim. The statute speaks for itself, and the Fund denies any allegations that inconsistent with its language.**

25. If these two elements are satisfied, the BCI exemption applies and ERISA's ordinary withdrawal rules do not.

**ANSWER: Denied as stated. The Fund admits that if an employer satisfies the criteria of 29 U.S.C. § 1383(b)(1)(A)-(B), the partial withdrawal liability rules under 29 U.S.C. § 1385 do not apply and that the rules under 29 U.S.C. § 1388(d)(1) apply instead.**

26. The BCI exemption's plain statutory text requires a cumulative count of "employees" who performed building and construction work over the relevant time period.

**ANSWER: Denied. Nothing in the text of the BCI Exemption plainly requires a cumulative count of employees or provides any guidance with respect to the time period(s) over which a count of the employees is to be conducted. To the contrary, the text of the BCI Exemption sets forth no standards, parameters, time periods, or rules governing the manner of measuring whether "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry."**

27. Here, the parties agreed the relevant time period for the 70% Decline Claim is the 8-year period from 2007 to 2014. The parties also agreed the relevant time period for the 2017 Chattanooga Claim is the 8-year period from 2009 to 2016.

**ANSWER: This allegation seeks to paraphrase or characterize the**

contents of written documents, *i.e.,* the parties' stipulations. Those documents speak for themselves, and the Fund denies any allegations that are inconsistent with them. In further response, although the parties stipulated to data over 8-year periods for both claims, the parties did not agree that such time periods were the "relevant time period[s]," and the Fund expressly contended that such periods were not required under the silent and ambiguous statutory provision.

28. During those time periods, over 95% of GE's boilermaker employees performed building and construction work—well above the threshold that courts recognize qualifies as "substantially all."

ANSWER: Denied. According to the stipulated data, at no point during those time periods did GE's proportion of covered employees performing work in the building and construction industry reach a level of 95%, with the exception of a single month during which the Chattanooga shop was closed. Indeed, for the overwhelming majority of the months during that period, GE's ratio of building and construction industry employees was below 85%. A cumulative headcount analysis distorts the ratio of shop to field workers due to material differences in the turnover rates of such employees and does not reflect GE's actual operations. Nonetheless, GE advocates for such an analysis because it appears to achieve the purported 85% threshold under it.

29. The Fund primarily covers employees in the building and construction industry.

ANSWER: Admitted.

30. Accordingly, the Arbitrator correctly determined that the BCI exemption shielded GE from partial withdrawal liability on the 70% claim.

**ANSWER: Denied. The Award is replete with errors, contradictions, inconsistencies, misstatements of fact and law, and over-simplistic generalizations, strongly suggesting that the Arbitrator was distracted by the "red herrings" offered by GE. The Award is simply wrong and should not be confirmed or enforced.**

31. The Fund conceded that if the BCI exemption shields GE from withdrawal liability on the 70% Decline Claim then it also shields GE from liability on the Chattanooga Claim.

**ANSWER: This allegation seeks to paraphrase or characterize the contents of a written document, *i.e.*, a letter from the Fund dated February 13, 2023, which GE attached as Exhibit 8 to its motion for summary judgment. The document speaks for itself, and the Fund denies any allegations that are inconsistent with this document.**

32. The Arbitrator correctly found that the BCI exemption shields GE from withdrawal liability on the 70% Decline Claim, and that the BCI exemption also shields GE from withdrawal liability on the Chattanooga Claim.

**ANSWER: Denied. The Award is replete with errors, contradictions, inconsistencies, misstatements of fact and law, and over-simplistic generalizations, strongly suggesting that the Arbitrator was distracted by the "red herrings" offered by GE. The Award is simply wrong and should not be confirmed or enforced.**

## [GE's] DEMAND FOR RELIEF

33. Wherefore, GE respectfully requests that this Court enter judgment:

a. Confirming the Arbitrator's Award to the extent it vacated the Fund's withdrawal liability assessment;

b. Ordering the Fund to refund with appropriate interest any excess payments made by GE;

c. Ordering the Fund to pay GE's costs and expenses incurred in this action, including reasonable attorneys' fees; and

d. Award GE any other just and proper relief.

**ANSWER: The Fund denies that GE is entitled to any of the relief requested in this paragraph or its subparagraphs.**

## AFFIRMATIVE DEFENSES

1. The Award is legally erroneous and should not be confirmed or enforced, but instead should be vacated.

2. Regardless of whether the Award is confirmed or enforced, GE is not entitled to reasonable attorneys' fees or costs in this action.

Dated: February 13, 2024

                                        Respectfully submitted,

                                        **TUCKER ARENSBERG, P.C.**

                                        */s/ Neil J. Gregorio*
                                        Neil J. Gregorio, Esquire
                                        MO I.D. No. KS-001101
                                        KS I.D. No. 28000
                                        PA I.D. No. 90859
                                        ngregorio@tuckerlaw.com

1500 One PPG Place
Pittsburgh, PA 15222
412-566-1212

*Attorneys for Plaintiffs*

TADMS:20243270-4:032403-200273

## CERTIFICATE OF SERVICE

  I hereby certify that on this date, a copy of the foregoing was filed and served on all counsel of record electronically via the Court's CM/ECF system.

*s/ Neil J. Gregorio*
Neil J. Gregorio
